Good morning, your honors. May it please the court. I'd like to reserve three minutes for rebuttal. Given the government's concession last week that there was no recent suspicion on behalf of the officer at this case, a finding that it's consistent with that of the district court. The central issue before you now is whether on the undisputed facts Mr. Jackson was seized or whether the alternative, whether an evidentiary hearing should have been ordered. The Supreme Court on the issue of seizure recently rather forcefully reinforced that the inquiry in terms of a seizure is twofold. One can be seized not necessarily by the use of force, that's not required, but it's a question of is it voluntary submission to authority or termination of freedom of movement. Those are two alternatives. One can exist and without the other. But in this case, we believe both of those existed. And here's why. Number one, Mr. Jackson submitted a sworn declaration that Officer Romba, I believe that's how you pronounce his name, blocked his car when the police officer pulled into the cul-de-sac. We believe that is buttressed by Officer Romba's declaration, which is excerpts of Record 40, where he notes that he approached the car from the rear. And then you have the police officer demanding Mr. Jackson, according to Mr. Jackson's driver's license, to conduct the records checks. Now, I can't think of a clear example of somebody not feeling free to leave under those circumstances. You know, can I interrupt and ask, the hard part for me is footnote two in the Kim case, where the court writes, even if Agent Kim had more completely blocked the departure of Kim's automobile, Agent A, I'm sorry, A-U, I'm sorry, Kim enjoyed greater latitude during his initial conversation with Agent to depart even if on foot. And Judge Donato below said, well, he was free to walk away. How do you get out from under footnote two of Kim? Well, two things, Judge Fletcher, I think are important here. Number one, Kim on its facts is distinguishable because it was more than just the fact that the car was partially blocked or unblocked. The agents were not in a marked car. They were in plainclothes. And the salient point to me was they asked permission of the defendant before they started to ask questions. That is not the case here. There was no permission asked. Mr. Jackson stated that the officer approached his car, demanded his driver's license, and said he was going to run a records check. After Mr. Jackson gave his driver's license, he is not in a position to just simply walk away. Number one, the officer is standing at the door. Number two, the officer has his driver's license. I don't think any reasonable person would just feel free, well, at this point I can get, I'll leave my driver's license with a police officer. Maybe I'll get it back. Maybe I won't, but I'm going to take off. So I think Kim is certainly distinguishable on that ground. The other point is Mr. Jackson stated, and this is an excerpt of record 32 in his declaration, that he felt like he didn't have permission to get out of the car. And that's the other factor at play here. One of the other factors at play here is the test for seizure is kind of an objective analysis of a subjective state of mind. In other words, does a reasonable person under the circumstances feel free to leave? And to the extent that Mr. Jackson felt like he needed the permission of the officer to take off for his consent, that certainly suggests to me very strongly that he did not feel free to leave the scene. Let me ask you about the driver's license, because I thought that was one of the points that you asked us to remand on, to determine, in fact, whether the officer had his license. Is that unclear from the record? Well, it's in dispute, Your Honor, because the officer in his declaration, he merely, he asked for identification. Mr. Jackson said that he told him that I want to see your driver's because I'm going to run a record check. I think those are two distinct and somewhat contradictory facts. So you think that it's still in dispute? Did he have or not have the driver's license? That's one dispute. And then the other dispute is, did he block or not block? That's correct, Your Honor. And that's also relevant certainly to the seizure analysis. I guess my issue with the government's approach here is they're doing it rather piecemeal. If you'll notice on page nine of their opposition brief, they're focusing on things that individually did not constitute a seizure. But the test, as the court has stated in the United States versus Washington, is the totality of the circumstances. And we think there's so many layers here, that it's quite clear Mr. Jackson was seized. The other thing that I think is really important is that reality has to inform to some degree, in this case I believe to a large degree, what is reasonable under the circumstances. The reason I say that is this. This particular arrest and seizure occurred in 2018. Beginning in 2014, there were at least six very well publicized encounters between police officers and black men that ended very badly. They ended in death in all of them. And I'm certainly not asking for the court to draw a bright line here and say that anytime there is a police encounter between a police officer and a person of color, that the police officer's actions are suspect or that every defendant can't feel free to leave. But as this court itself held in the United Services of Brown, ethnicity can be part of the analysis in determining a person's reaction to police. And that is something that I think is front and center in this case for a number of reasons. Number one, Mr. Jackson and his companion were parked in a cul-de-sac. They were legally parked. They had been there for three hours, I believe, by the time that the person called the police and told them he saw a suspicious vehicle and that he was uncomfortable. And the action to the police officer, at least according to Mr. Jackson, blocking him in, shining his flashlight in a car, telling him he was going to run a records check, to me suggests nothing other than the fact that Mr. Jackson reasoned to believe that he was being seized and he was not free to leave. Now, I'm not suggesting that police officers have no options here. I'm running out of time, so I'll try and make this quickly. The officer could have, you know, just come up and said, somebody called. Can I ask you a couple of questions? I received a report. Do you live around here? And in fact, the passenger and Mr. Jackson both told Officer Rombo that they were in the area and the passenger lived a couple of houses down from where they were parked. He could have not blocked the Mr. Jackson's egress. He could have told him you're not being detained. He could have told him you're free to leave. None of that happened in this case. So, under the totality of the circumstances, I believe that on the undisputed facts, the district court should have granted the motion to suppress, but at the very least, an evidentiary hearing would be required. Let me just, I'll give you, make sure you have time for that. And let's assume in an evidentiary hearing that it's determined that he didn't block or that there's no evidence that he blocked. How would that change the calculus if we did not have any blocking? Well, even if there was no blocking, Your Honor, Mr. Jackson felt he was not free to leave. He felt he could not back out the car without hitting the police car. So I think that's to find that he had been blocked. But in an evidentiary hearing, you know, the court is permitted, in fact required, to make credibility determinations. He gets a much more complete picture of exactly how the area set out, exactly where the police officer was positioned, exactly where Mr. Jackson was positioned, and Mr. Jackson's belief as to whether he could actually, you know, back his car up without hitting a police car. That's a credibility determination. That is exactly the type of thing that should have been conducted in this case. And did not the district court actually find that it wasn't relevant and cited both the Summers and the Kim case in terms of supporting that position? He did, Your Honor, and we believe that that was error. We believe that at the very least, under the circumstances, we requested an evidentiary hearing. We did not get one, and that's one of the things the court could have conducted in order to resolve that question. Thank you. Thank you. Good morning, Your Honors. May it please the court. Noah Stern on behalf of the United States. This court should affirm the district court's ruling on the motion to suppress because the officer did not seize Jackson prior to learning that he was on parole, and there was no dispute of facts requiring an evidentiary hearing. Taking into account all of the facts alleged in Jackson's declaration, the officer made no show of authority that would communicate to a reasonable, innocent person in Jackson's shoes that he was not free to decline the request for identification or otherwise terminate the encounter. Mr. Stern, let me ask you a question that is, for the moment at least, independent of the case law. I want to ask it this way because I find that our case law is actually quite contrary to human experience. But for the moment, disregarding the case law, had you been in Mr. Jackson's position, whether or not the police car was physically blocking your backing away, and the police officer comes to you, acted as this police officer did, would you have felt free to leave? I'm talking, I'm not talking case law, I'm talking you personally. Would you have felt free to leave? Your Honor, I believe I would have felt free to decline the request for identification. That's not my question. My question is, would you have felt free to leave? Well, but Your Honor, I don't think that's the appropriate standard. I think it's... Well, no, the question is, the legal question is, would you feel free to leave? And I understand that our case law is almost in fantasy land, but I'm asking you a commonsensical question, not a case law question. Your Honor, I understand the question. I respectfully disagree with the standard, though, because I think the Supreme Court said in U.S. v. Drayton, when someone is in a place where they don't desire to leave, the question is whether the person would feel free to decline the request or otherwise terminate the encounter. So in this sort of situation, I could have simply said, no, I don't need to provide you my identification. I'm sitting here in a parked car, and I'm free to do that. I don't need to do that. And then the officer has a decision. He can walk if he does, then there's no question. It's a seizure. Mr. Starr, let me ask you, if I can interrupt you, it's a great honor for me to be on this court. As you may know, I've been a district court judge for about 19 years, and I find it curious that based on the facts of this case, as I understand it, there was a denial of the motion to suppress without an evidentiary hearing. Is that correct? That's correct, Your Honor. You find it's a little unusual on the district court level to deny an evidentiary hearing under these kind of facts? Is it not the case more ordinarily, certainly, that there is some type of evidentiary hearing when these kinds of facts are in dispute? It's a little abnormal, is it not, to proceed without an evidentiary hearing? I wouldn't agree with that, Your Honor. Give us a percentage, then. Give me a percentage. As a district court judge, being privileged to sit here on the appellate court, I think it's a little bit... You would admit that in the majority of cases, a district court judge will have an evidentiary hearing on something like this, correct? Well, I can only speak from my own experience, and in the motions to suppress I've handled, I have not had an evidentiary hearing. You have not? Including in situations where the question was whether there was reasonable suspicion or whether the person was freed. That's a small subset of cases, and we could do an analysis on that. I know that's a difficult question, because what has struck me is that in terms of, as Judge Fletcher has noted, in terms of whether he's free to leave or not, the district court seemed to place great emphasis upon both the Kim case, an opinion of this court in 1994, and the Summers case, an opinion of this court in 2001. And both of those cases seem clearly distinguishable to me in terms of the alleged facts here, in terms of whether or not the car is completely blocked or not. There seemed to be a need to make some kind of factual finding on a record, given a great reliance upon two cases which clearly seemed to be distinguishable. Well, Your Honor, I have a couple responses to that. And I mean, I think first, the standard for whether the district court abused its discretion in not holding an evidentiary hearing is whether there was a dispute of facts of, you know, sufficient deafness, clarity, and specificity. And here, Jackson didn't allege any facts with his motion.  And the government is suggesting that you should assume all the facts in Jackson's declaration as true. And even under those facts, there clearly was not a seizure under the court's case law. Well, let's talk about the court's case law. We've got Kim in a footnote, which may well be dicta. But leave that aside, because I know we can always argue about what's dicta. But when we talk about Summers and Washington, why would they even talk about the location of the officer's car if it were not relevant? So in the Summers case, they say, well, the officer is perpendicular. So therefore, he isn't blocking Mr. Summers' backward travel. And then you go to the Washington case, and there they talk about the car was parked a full car length away, which obviously shows that Washington may well have been able to So we have we have cases that say, if you look at the totality of the circumstances, you do look at whether the car was blocked or not. So why don't we have here a factual issue that could add to this constellation of facts? And if I can just add one question with the, Judge McKeown's question, as I understand it, in the in the Summers case, the defendant was already out of the car and on foot, was he not? That's correct, Your Honor. And so with respect to the position of the car, we acknowledge the position of the car is absolutely relevant to whether there was a show of authority here. And here you should look at Jackson's declaration at Excerpts of Record 32, where he said that he saw the patrol car enter the area where he was parked and that it parked behind him in such a way that he didn't think it permitted him to back out. And so there's nothing about the way the officer parked his car based on that description. Well, I don't know. That's pretty clear to me. He says the car is such that I don't think I can get back out of here. What's missing? Well, so so I think there are two different things. One thing is about whether the car could have left and whether Jackson actually said that. Jackson did not say that he could have not driven the car to the parking spot. And I think it's worth looking at Excerpts of Record 30, which is a satellite image of the cul-de-sac where the encounter occurred, and Excerpts of Record 49, which is a Google Street View of the parking space that the car Jackson was in was parked in. And as you can see, he was parked in the parking spot closest to the exit of the cul-de-sac. And that's from Excerpts of Record 40, the officer's declaration, which is undisputed. So if you look at that, it looks quite possible to me that he could have pulled forward and to the right to exit the cul-de-sac. Or at a minimum, he could have pulled back, you know, a foot or two and then pulled forward and to the right to exit the cul-de-sac. So I think it's meaningful. That's all possible. But what did the district court say about that? Well, I think the district court said it didn't matter whether the car was blocked in or not, because he could have left on foot. But I think that regardless of that, there's no need for an evidentiary hearing when you accept all of Jackson's facts as true. Can I interrupt for a minute? Yes, Your Honor. Do you agree with the district judge that whether he was blocked or not is irrelevant? It sounds as though you do not agree with that. Your Honor, I think under these circumstances, I agree with the district judge that it is irrelevant, because taking into account all of the circumstances here and all of the hallmarks of a consensual encounter that are present here, I believe a reasonable person, a reasonable innocent person in Jackson's shoes would have felt free to decline the request for identification or get out of the car and walk away or drive away. So ultimately— I mean, that's where we go back to Judge Fletcher's common sense. That makes no sense to me. You got the police officer. If you take Jackson, I can't drive out of here. He wants my identification. We don't know, apparently, if he's actually got it in hand or not. He's supposed to get out and walk away at that point? That just kind of defies common sense to me. But that was not the only option he had. He could have declined the request. He could have said, excuse me, I don't want to talk to you. I'm going to get out of the car. And then the officer has to respond and say, okay, that's fine, or do something more coercive and aggressive. And here, under the court's case law, there are none of the hallmarks of aggression that give rise to a stop. Instead, this is the quintessential consensual encounter that the courts have said is okay. And just to respond to Mr. Matthews' point about the reality here and the backdrop, I think it's worth looking at Washington, footnotes one through three on pages 768 and 769, where there was a very similar backdrop, and the court held that the initial encounter, which was very similar to the encounter here, did not give rise to a seizure. And so unless the court has further questions for me, I respectfully request that the court affirm the district court's denial of the motion to express. Thank you. Thank you. Mr. Matthews. Thank you, Your Honor. Just a couple of brief comments. Number one, just to try and give a bit of anecdotal response in terms of evidentiary hearings. Typically, any time a contrary declaration is submitted by a defendant, at least in my experience, the court has held an evidentiary hearing to resolve the disputed issues of fact. Obviously, as different lawyers on different sides of the case, we may have different experiences, and a number of cases have ended up in that result, but that's certainly been true in my experience. And that is true even when an evidentiary hearing is not requested. Sometimes declarations may not necessarily conflict on their face, but a court feels that to resolve the legal issue appropriately, an evidentiary hearing is required. But I just want to briefly respond more substantively to my colleague's thoughts about whether Mr. Jackson felt it was free to leave. The idea that someone in Mr. Jackson's position would feel free to simply walk away from this encounter as a Kimmerer, I can't conjure how a person who has surrendered his driver's license, and again, this may be a factual dispute, to an officer that says, I'm going to run a records check, feels that he can just completely get up and just leave the scene. There was nothing that suggested to him by the officer's conduct that he was free to do so. Then I think the Kim and Summers cases, as this panel has noted, are absolutely distinguishable. I assume that if he had the driver's license in hand, meaning the officer, that your client couldn't drive away because then he'd be arrested with driving without a license, right? So that's one scenario. But let's say the officer's got his driver's license and he walks away. And now the officer runs the check and says, oh my gosh, we've got some kind of parole violation here. Then would your client be presumed to have fled the scene? Would that have been a factor that he was fleeing as opposed to casually walking away from an encounter? Well, that's interesting because that would somewhat depend on the view of the officer. The officer may feel in his own mind that, well, this is flight, and that might give rise to reasonable suspicion. And for that reason, I can go detain him. So it's difficult for me to argue from Mr. Jackson's perspective, but certainly that might have given the officer a reason to detain him at that point. It's just our position that he was seized prior to that time. And it looks like I'm already over my time. So unless the panel has any further questions, I'm prepared to submit. Thank you. The case just argued of United States v. Jackson is submitted. I do thank you both for your very well-informed arguments. And the court is adjourned for the morning.
judges: McKEOWN, FLETCHER, Bennett